# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:10CR573 HEA |
| ) | |
| ROBERT M. SILLS, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This case is before the Court on defendant's *pro se* Motion for Sentence Modification under 18 U.S.C. § 3582(c)(1)(A)(i), [Doc. No. 232]. By Administrative Order of the Court, Defendant was appointed counsel to determine eligibility to petition the Court for compassionate release and file motions where appropriate. Counsel filed a Motion for Reduction of Sentence, [Doc. No. 240] on October 10, 2020. The government opposes the Motions. The Court has also received a correspondence in support of the Motion. For the reasons set forth below, the Motions are denied.

## Background

Defendant, along with other co-conspirators, engaged in a conspiracy to transport more than five kilograms of cocaine from Houston, Texas to St. Louis, Missouri. Co-conspirators were willing to testify to at least three separate

occasions between June 2010 and October 18, 2010 where two co-conspirators at a time would transport multiple kilograms of cocaine by train and bus. In each event, Defendant acted in a leadership role in either Houston, St. Louis, or both. On June 3, 2010, Defendant flew from Houston to St. Louis to pick up two co-conspirator couriers and cocaine at the St. Louis Amtrak station. On August 8, 2010 Defendant dropped off two bags of cocaine in Houston for the coconspirator couriers to transport to St. Louis. On an unknown date, Defendant again collected the couriers and drugs at the St. Louis Amtrak station. On October 18, 2010, two of Defendant's co-conspirators were arrested upon arriving at their destination. Six kilograms of cocaine were found with the couriers. In addition to the transportation events, co-conspirators witnessed on multiple occasions that Defendant and Kameshia Byrd were in possession of large amounts of drug derived currency.

     Defendant was indicted on December 16, 2010 for conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1). The Drug Enforcement Administration arrested Defendant while he was on bond awaiting voluntary surrender to the Bureau of Prisons for his federal cocaine conspiracy conviction in the Eastern District of Michigan for which he had been sentenced to 136 months imprisonment.

The parties in the Eastern District of Missouri entered into a negotiated settlement, the terms of which provided that Defendant would plead guilty to the conspiracy charge, in exchange for which the government would not give notice of intent to seek an enhanced sentence under 21 U.S.C. § 851. Said plea was entered on June 28, 2011. The Court sentenced Defendant, consistent with the plea deal, to incarceration for a term of ten years. This sentence constituted the statutory minimum sentence for this offense and fell below the range recommended pursuant to the advisory Sentencing Guidelines.

Defendant also faced murder-for-hire charges in Eastern District of Missouri Case No. 4:10CR00523 JCH. In a global resolution of the Eastern District of Missouri charges, defendant pled guilty to an information charging witness tampering in violation of 18 U.S.C. § 1512(b)(1). Defendant later challenged his plea as invalid because the tampering with a witness charge only applies to witnesses in federal proceedings, whereas the subject witness was a witness in a state proceeding. The government conceded his motion to vacate the conviction.

Defendant Sills is presently serving his sentence at USP Pollock in Louisiana, with a projected release date of November 30, 2027. He is 47 years old. At the time of his original sentencing, the U.S. Probation Office's Presentence Investigation Report noted that Defendant reported having suffered from asthma

3

since childhood, requiring the use of an inhaler as needed. He further reported suffering from acid reflux and arthritis in his left foot.

## Defendant's Motion

On August 17, 2020, Defendant filed a *pro se* request with the Court for compassionate release due to asthma, reflux and an undefined Neurological Condition, a "Cranial Nerve Condition." Defendant claims all three (3) conditions are interrelated and cause, *inter alia*, blurred vision, dizziness, headaches and imbalance. For these reasons, Defendant claims that he is unable to properly care for himself in a correctional facility setting.

## Discussion

Under Section 603(b) of the First Step Act, effective December 21, 2019, an inmate may now himself (or through his advocate) file a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). Previously, a court could only act to reduce a defendant's sentence for "extraordinary and compelling reasons" if the Director of BOP filed such a motion. As the proponent of the motion, defendant bears the burden of proving both that he has satisfied the procedural prerequisites for judicial review and "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to

4

proof on a given issue normally has the burden of proof as to that issue.").

In evaluating a defendant's request for reduction in sentence on its merits, 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to find that "after considering the factors set forth in section 3553(a) to the extent they are applicable," that "extraordinary and compelling reasons warrant such a reduction." Any reduction must be consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). United States Sentencing Guideline § 1B1.13, which governs compassionate-release reductions, provides some specific examples, including:

> (A) Medical Condition of the Defendant.—
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>>
>> (ii) The defendant is—
>>
>>> (I) suffering from a serious physical or medical condition,
>>>
>>> (II) suffering from a serious functional or cognitive impairment, or
>>>
>>> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-

> care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old;

> (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

On May 20, 2020, Defendant sent a request to the warden of Seagoville Prison Camp, where he was housed at the time, for a compassionate release due to COVID-19. On June 15, 2020, the warden denied Defendant's request. Defendant has exhausted his administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A).

In support of his request, Defendant cites his asthma, Hyperlipidemia, osteoarthritis in his ankle and left foot, chronic pain, bouts of aural vertigo, and

recently, chronic ear pain. Defendant argues he is particularly at risk for suffering direly if he contacts the COVID-19 virus. He also cites his good behavior while in the BOP and the classes he has taken while incarcerated.

The Court does not find that Defendant has met his burden of proving that extraordinary and compelling circumstances exist warranting a reduced sentence. Defendant's diagnoses during the COVID-19 pandemic does not necessarily constitute an extraordinary and compelling circumstance warranting compassionate release. Defendant has produced nothing to establish that the facility cannot adequately treat him in the event he would unfortunately contract the virus. Likewise, the possibility of contacting the virus does not constitute extraordinary circumstances.

Defendant's involvement in prison programs and good behavior are commendable. However, rehabilitative efforts do not constitute extraordinary and compelling circumstances warranting defendant's release. *See* U.S.S.G. § 1B1.13, application note 3 ("Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").

For the foregoing reasons, this Court finds that Defendant has not met his burden of proving that "extraordinary and compelling reasons" exist to support the

requested sentence reduction.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motions for Sentence Modification under 18 U.S.C. § 3582(c)(1)(A)(i) [Doc. No.'s 232 and 240] are denied.

Dated this 30th day of December, 2020.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE